**Electronically Filed**
**Intermediate Court of Appeals**
**29688**
**26-DEC-2012**
**09:02 AM**

NO. 29688

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
HENRY POMROY, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(North and South Hilo Division)
(Report No. C06030300 (3P207-738))


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Fujise, JJ.)

Defendant-Appellant Henry Pomroy (Pomroy) was charged with third-degree assault, in violation of Hawaii Revised Statutes (HRS) § 707-712(1)(a) (1993).[1] After a jury-waived trial, he was found guilty as charged. The District Court of the Third Circuit (District Court)[2] sentenced Pomroy to one year of probation subject to the condition that he serve ninety days of imprisonment.

On appeal, Pomroy contends: (1) the District Court engaged in a defective Tachibana colloquy[3] in obtaining Pomroy's

---

[1] HRS § 707-712(1)(a) provides: "(1) A person commits the offense of assault in the third degree if the person: (a) Intentionally, knowingly, or recklessly causes bodily injury to another person[.]" (Formatting altered.) As used in HRS 707-712(1)(a), the term "bodily injury" means "physical pain, illness, or any impairment of physical condition." HRS § 707-700 (1993)

[2] The Honorable Barbara T. Takase presided.

[3] Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).

on-the-record waiver of his right to testify; (2) there was insufficient evidence to support his conviction; and (3) his trial counsel failed to provide effective assistance.  We affirm.

BACKGROUND

I.

The complaining witness, Clark Lukens (Lukens), was disabled and required crutches to walk.  Pomroy and Lukens resided in the same apartment building, and Lukens was a member of the apartment's board.

Lukens testified that on the day of the charged offense, Pomroy approached Lukens while he was talking to another board member in the yard.  According to Lukens, Pomroy was "extremely aggravated and aggressive."  Pomroy screamed at Lukens, came within two inches of Lukens's face, and bumped Lukens with his chest.  Pomroy accused Lukens of attempting to get Pomroy evicted from the building.  Lukens walked away from Pomroy and talked to the landscaper for the apartment.  After Lukens lost sight of Pomroy, Lukens felt it was a safe time to return to his apartment, which was on the seventh floor.

Lukens walked to the elevator in the lobby of the apartment building.  As Lukens stepped into the elevator and pushed the button for the seventh floor, Pomroy suddenly appeared and entered the elevator.  Pomroy and Lukens were alone in the elevator.

Lukens testified that the instant the elevator doors closed, Pomroy attacked him.  Pomroy pushed Lukens into a corner and repeatedly struck Lukens about the throat, neck, and top of the shoulders.  Pomroy used his forearms and elbows to strike Lukens.  Lukens testified that "for the whole seven floors, [Pomroy] just pounded me."  During this time, Pomroy told Lukens that "he was gonna kick [Lukens's] ass, he was gonna beat the F'n shit outta [Lukens], he was gonna teach [Lukens] manners."

When the elevator doors opened on the seventh floor, Pomroy immediately stopped hitting Lukens and backed away. Lukens's wife was waiting at the elevator and helped Lukens off.

Lukens called the police. Lukens testified that on a scale of zero to ten, with zero representing no pain and ten representing the most severe pain, the pain he experienced from Pomroy's attack was a seven or eight. Lukens asserted that he did not do anything to provoke Pomroy. He also stated that he did not want to get into a physical confrontation with Pomroy, because "[o]n crutches I'm not much good in fighting."

Lukens's wife testified that she went to the elevator on the seventh floor after receiving a call asking if her husband was okay. While waiting for the elevator, she could hear Pomroy screaming and yelling. When the elevator doors started opening, she saw Pomroy "jump away" from her husband. Pomroy appeared "hepped up" and aggressive, while her husband appeared "[s]haken up quite a bit." Lukens's wife helped her husband out of the elevator and back to their apartment. She stated that Lukens complained of pain to his chest and neck.

Robert Robbins (Robbins), the landscaper for the apartment building, testified that on the day of the charged offense, Pomroy confronted Robbins in the yard. Pomroy was angry and upset, and he complained about people cutting down trees. According to Robbins, Lukens approached them and told Pomroy to leave Robbins alone. Pomroy and Lukens argued from a distance and then both walked away. Robbins saw Lukens enter the foyer to the apartment building and then saw Pomroy enter the foyer.

Hawaiʻi County Police Officer Malia Bohol (Officer Bohol) testified that she was assigned to an assault investigation and took a statement from Pomroy. Officer Bohol stated that she advised Pomroy of his constitutional rights. Pomroy waived his rights and agreed to make a statement. Pomroy told Officer Bohol that he heard a chainsaw, and went outside to see what was happening. While outside, he met up with the gardener and Lukens, and Lukens told the person using the chainsaw to turn it off.

3

Pomroy discussed whether anything had happened between himself and Lukens in the elevator. According to Officer Bohol, Pomroy told her that:

> [O]n his way back up to his residence he road [sic] in the elevator with Mr. Lukens and he did not put his hands on Mr. Lukens in any way. And that Mr. Lukens stated to him, quote, "Make your move." And he stated when he got out of the elevator nobody was there. But a female party asked him to assist her in getting back into her apartment because she locked herself out.

## II.

At the conclusion of Officer Bohol's testimony, Plaintiff-Appellee State of Hawai'i (State) rested its case. The defense also indicated that it planned to rest. However, before the defense rested, the District Court engaged in the following colloquy with Pomroy:

> [Prosecutor]: State rests.
>
> [Defense Counsel]: We'll rest too, Your Honor.
>
> THE COURT: Alright. Mr. Pomroy, before your attorney does that, let me advise you. You have the right to testify on your own behalf. That decision is yours and yours alone. If you choose to testify you will be subject to cross-examination by the State. If you choose not to testify, I cannot hold that against you. But the only evidence I will have is what the State has presented, unless you have other witnesses; you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Alright. Is it your choice to testify or not?
>
> THE DEFENDANT: I think I have already said what has happened, yeah. I don't have to testify.
>
> THE COURT: Alright. I don't know what you mean by "I've already said" because --
>
> THE DEFENDANT: In my report, when I made it two years ago, what had happened. That's pretty much what it is.
>
> THE COURT: So you're talking about what the officer testified to? Because you understand the police report is not in evidence. You understand that?
>
> THE DEFENDANT: I don't understand what you're saying.
>
> (Discussion between Counsel and Defendant)
>
> THE COURT: Alright.
>
> THE DEFENDANT: I don't need any testimony I guess.

4

THE COURT: Your choice not to testify?

THE DEFENDANT: Yes, ma'am.

THE COURT: Alright. And, Mr. [Defense Counsel], you're going to rest then?

[Defense Counsel]: Yes, your Honor.

### III.

After hearing closing argument, the District Court found Pomroy guilty as charged. In support of its verdict, the District Court found that Lukens's testimony was credible and that it was corroborated by the testimony of his wife. The District Court also concluded that the charged offense of third-degree assault could be proven by the testimony of a witness and did not require independent physical evidence of external injuries or require that the victim seek medical attention or go to the hospital.

Pomroy filed a motion for a new trial. Relying on Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995), Pomroy argued that the District Court violated his right to testify by failing to advise him of that right at the beginning of trial and failing to adequately advise him of that right at the close of trial. After obtaining a transcript of the District Court's Tachibana colloquy with Pomroy just prior to the close of trial, the State argued that Pomroy's motion should be denied. The District Court denied Pomroy's motion for new trial and sentenced Pomroy. The District Court filed its Judgment of Conviction and Sentence on February 17, 2009, *nunc pro tunc* to February 9, 2009, and this appeal followed.

### DISCUSSION

### I.

Pomroy argues that the District Court violated his right to testify by engaging in a defective Tachibana colloquy in obtaining Pomroy's waiver of his right to testify. We disagree.

### A.

In Tachibana, the Hawai'i Supreme Court adopted the "colloquy approach" instead of the "demand rule" or "post-trial

5

challenge approach" to address the issue of whether a defendant's right to personally decide whether to testify has been violated. Id. at 231-36, 900 P.2d 1298-1303. The supreme court recognized that the colloquy approach increased the undesirable risks that the trial court could influence the defendant's decision on whether to testify and could improperly intrude on the attorney-client relation protected by the Sixth Amendment. Id. at 235, 900 P.2d at 1302. The supreme court, however, concluded that the colloquy approach was the best way to safeguard the defendant's right to decide whether to exercise his or her right to testify.

The supreme court held "that in order to protect the right to testify under the Hawai'i Constitution, trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." Id. at 236, 900 P.2d at 1303 (footnote omitted). To minimize the unfavorable risks presented by the colloquy approach, the supreme court directed the trial courts to conduct the colloquy as follows:

> In conducting the colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify and should limit the colloquy to advising the defendant that he or she has a right to testify, that if he or she wants to testify that no one can prevent him or her from doing so, and that if he or she testifies the prosecution will be allowed to cross-examine him or her. In connection with the privilege against self-incrimination, the defendant should also be advised that he or she has a right not to testify and that if he or she does not testify then the jury can be instructed about that right.

Id. at 236 n.7, 900 P.2d at 1303 n.7 (formatting altered and brackets and citation omitted; emphasis added).

After determining the required colloquy, the supreme court turned to the question of the timing of the colloquy. Id. at 236-37, 900 P.2d at 1303-04. The supreme court noted that in a jury trial, there is some potential for prejudice if the colloquy is not conducted until after the defendant rests. Id. at 237, 900 P.2d at 1304. The supreme court concluded that "the ideal time to conduct the colloquy is immediately prior to the

close of the defendant's case. Therefore, whenever possible, the trial court should conduct the colloquy at that time." Id.

The supreme court then addressed the implications of the trial court's failure to conduct the colloquy at the "ideal" time:

> If the trial court is unable to conduct the colloquy at that time, however, such failure will not necessarily constitute reversible error. If a colloquy is thereafter conducted and the defendant's waiver of his or her right to testify appears on the record, such waiver will be deemed valid unless the defendant can prove otherwise by a preponderance of the evidence. See Ibuos, 75 Haw. at 121, 857 P.2d at 578 ("[W]here it appears from the record that a defendant has waived a constitutional right, the defendant carries the burden of proof to show otherwise by a preponderance of the evidence."). Similarly, if a defendant asserts his or her right to testify during a colloquy conducted after the defense has rested and the trial is reopened to allow the defendant to testify, the defendant's right to testify will be considered satisfied unless the defendant can demonstrate that he or she was actually prejudiced by the fact that the testimony was given after the defense had already rested.

Id. at 237, 900 P.2d at 1304 (brackets in original; emphasis added).

In a footnote (footnote 9), the supreme court recommended that in addition to the colloquy conducted immediately prior to the close of the defendant's case, the trial court should also warn the defendant about his or her right to testify prior to the start of trial. The supreme court stated:

> Furthermore, although the ultimate colloquy should be conducted after all evidence other than the defendant's testimony has been received, it would behoove the trial court, prior to the start of trial, to (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision. Such an early warning would reduce the possibility that the trial court's colloquy could have any inadvertent effect on either the defendant's right not to testify or the attorney-client relationship.

Id. at 237 n.9, 900 P.2d at 1304 n.9.

B.

In State v. Lewis, 94 Hawaiʻi 292, 12 P.3d 1233 (2000), the supreme court prospectively mandated that the advisement it

7

recommended in footnote 9 of the Tachibana decision be given at the beginning of trial. The supreme court stated:

> [W]e believe there is a salutary effect to be obtained in all cases from a trial court addressing a defendant as suggested in footnote 9. Tachibana suggested that this prior-to-trial advisement should be implemented. However, as reflected in this case, not all trial courts are following this advice. Therefore, we now mandate that, in trials beginning after the date of this opinion, such advice shall be imparted by the trial courts to defendants, that is, the trial courts "prior to the start of trial, [shall] (1) inform the defendant of his or her personal right to testify or not to testify and (2) alert the defendant that, if he or she has not testified by the end of the trial, the court will briefly question him or her to ensure that the decision not to testify is the defendant's own decision."

Lewis, 94 Hawai'i at 297, 12 P.3d at 1238 (brackets around "shall" in original) (quoting Tachibana, 79 Hawai'i at 237 n.9, 900 P.2d at 1304 n.9).

The supreme court concluded that the prior-to-trial advisement was only "incidental" to the "'ultimate colloquy'" required by Tachibana. Lewis, 94 Hawai'i at 297, 12 P.3d at 1238. Therefore, instead of applying a harmless beyond a reasonable doubt standard to a violation of the prior-to-trial advisement requirement, the supreme court imposed the less stringent "actual prejudice" standard that it had applied to the failure to give the ultimate Tachibana colloquy at the ideal time -- immediately prior to the close of the defendant's case. Lewis, 94 Hawai'i at 297, 12 P.3d at 1238.[4] In other words, the supreme court treated the failure to give the prior-to-trial advisement the same as the failure to give the ultimate Tachibana advisement at the "ideal" time, and it imposed an "actual

---

[4] The supreme court stated:

> Because we view this prior-to-trial advisement as incidental to the "ultimate colloquy," [Tachibana, 79 Hawai'i at 237 n.9, 900 P.2d at 1304 n.9], any claim of prejudice resulting from the failure of the trial court to give it must meet the same "actual[ ] prejudice[ ]" standard applied to violations of the colloquy requirement. Id. at 237, 900 P.2d at 1304.

Lewis, 94 Hawai'i at 297, 12 P.3d at 1238 (brackets after "actual" and "prejudice" in original).

8

prejudice" standard of review for both, citing to its analysis of the timing of the colloquy in Tachibana. Lewis, 94 Hawai'i at 297, 12 P.3d at 1238.

C.

We reject Pomroy's contention that the District Court's Tachibana colloquy was defective. In conformity with Tachibana, the District Court, immediately prior to the close of Pomroy's case, engaged him in a colloquy which advised Pomroy that he had a right to testify; that the decision on whether to testify was solely Pomroy's decision; that if Pomroy chose to testify, he would be subject to cross-examination; and that the District Court could not hold Pomroy's failure to testify against him. See Tachibana, 79 Hawai'i at 236 n.7, 900 P.2d at 1303 n.7. The District Court also obtained an on-the-record waiver by Pomroy of his right to testify. See id. at 236, 900 P.2d at 1303.

The Tachibana colloquy serves the limited purpose of ensuring that the defendant understands that he or she has the right to testify and that the ultimate decision on whether to testify is for the defendant to make. In conducting the Tachibana colloquy, the trial court is not required to advise the defendant on whether the decision to testify is a sound one from the standpoint of trial strategy, or how the decision may affect the outcome of the case. The trial court is also not required to explain the rules of evidence to the defendant or the impact that a defendant's testimony may have on the trier of fact in light of the evidence presented in the case. Indeed, in Tachibana, the supreme court explicitly directed the trial court to confine the colloquy to the specified inquiries so that the trial court would not influence the defendant's decision on whether or not to testify. Id. at 236 n.7, 900 P.2d at 1303 n.7.

Pomroy argues that in conducting the Tachibana colloquy, the District Court had the duty to explain the difference between the evidentiary effect of the officer's trial testimony regarding Pomroy's statement and the police report regarding information Pomroy provided to the police, which had

9

not been admitted in evidence. We disagree. In conducting the Tachibana colloquy, the District Court was only required to determine whether Pomroy knowingly and voluntarily decided to waive his right to testify, and not whether Pomroy's decision was intelligent or advisable as a matter of trial strategy. Any confusion held by Pomroy over the evidentiary difference between the officer's trial testimony regarding Pomroy's statement and the police report was for Pomroy's counsel to explain, and the record indicates that Pomroy's counsel did discuss this issue with Pomroy. The record does not support Pomroy's claim that the District Court's Tachibana colloquy was defective.

The District Court failed to give Pomroy the prior-to-trial advisement mandated by Lewis. However, in order to overturn his conviction based on this Lewis error, Pomroy is required to demonstrate that he suffered actual prejudice as a result of the error. Lewis, 94 Hawai'i at 297, 12 P.3d at 1238 (citing Tachibana, 79 Hawai'i at 237, 900 P.2d at 1304). Here, we have already concluded that the District Court properly conducted a Tachibana colloquy immediately prior to the close of the defense case and that Pomroy made an on-the-record waiver of his right to testify pursuant to that colloquy. Pomroy has provided no basis for this court to conclude that the District Court's failure to provide the Lewis advisement prior to trial resulted in actual prejudice to him. Accordingly, Pomroy is not entitled to having his conviction overturned based on the District Court's Lewis error.[5]

---

[5] We note that the State concedes that Pomroy is entitled to have his conviction overturned based on the Lewis error. However, the Hawai'i Supreme Court has held that "appellate courts have an independent duty 'first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'" State v. Veikoso, 102 Hawai'i 219, 221-22, 74 P.3d 575, 577-78 (2003) (citation omitted). In other words, the State's concession of error "is not binding upon an appellate court[.]" State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) (internal quotation marks and citation omitted). In conceding error, the State applied the wrong standard of review to the Lewis error. The State applied a harmless beyond a reasonable doubt standard of review, whereas the correct standard requires Pomroy to demonstrate actual prejudice. We conclude that the State's concession of error was not well taken.

II.

Pomroy argues that there was insufficient evidence to support his conviction. In particular, Pomroy claims that the evidence was insufficient because the police officers did not observe physical evidence, such as bruising or redness, to support Lukens's testimony that Pomroy had struck Lukens repeatedly. We disagree.

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution. State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (block quote format and citation omitted). We give "full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact." State v. Yabusaki, 58 Haw. 404, 411, 570 P.2d 844, 848 (1977) (block quote format and citation omitted).

The third-degree assault charge against Pomroy required proof that he caused "bodily injury" to Lukens. The term "bodily injury" means "physical pain, illness, or any impairment of physical condition." Therefore, to prove that Lukens sustained bodily injury, the State was only required to show that he suffered physical pain as the result of Pomroy's alleged attack. It was not required to show that bruising, redness, or other marks were observed on Lukens's body. Lukens testified that Pomroy repeatedly struck him in the chest, neck, and upper shoulders, and that Lukens experienced pain as a result of Pomroy's attack. The District Court found Lukens's testimony credible. Lukens's wife also testified that Lukens complained of pain to his chest and neck.

We conclude that it was within the province of the District Court to determine that Lukens's testimony was credible. The record does not support Pomroy's claim that Lukens's

testimony was "incredible on its face." We further conclude that, when viewed in the light most favorable to the State, there was substantial evidence to show that Pomroy committed third-degree assault against Lukens, including that Lukens suffered physical pain and thus sustained bodily injury, as required for third-degree assault.

III.

Pomroy contends that his trial counsel failed to provide effective assistance. In pertinent part, Pomroy contends that his trial counsel: (1) failed to apprehend the State's burden in presenting evidence; (2) failed to produce witnesses to impeach the State's non-police witnesses; and (3) gave Pomroy faulty advice regarding whether to testify.

The defendant has the burden of establishing ineffective assistance of counsel, and must demonstrate: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Richie, 88 Hawai'i at 39, 960 P.2d at 1247 (block quote format and citation omitted). We conclude that Pomroy failed to meet his burden of establishing that his trial counsel provided ineffective assistance.

In closing argument, Pomroy's counsel argued that he "did not believe" that a court could accept only portions of a witness's testimony, but should either believe all of the witness's testimony or none of it. Pomroy contends that this statement shows that his counsel failed to apprehend the State's burden in presenting evidence. We conclude that counsel's statement in closing argument does not support a claim of ineffective assistance. Counsel was arguing that if the District Court disbelieved certain portions of the testimony of a witness called by the State, the District Court should disregard all of

12

the witness's testimony. That is a legitimate argument and does not demonstrate ineffective assistance.

Pomroy argues that trial counsel should have called witnesses to impeach the credibility of the State's non-police witnesses. "The decision whether to call witnesses in a criminal trial is normally a matter within the judgment of counsel and, accordingly, will rarely be second-guessed by judicial hindsight." State v. Onishi, 64 Haw. 62, 64, 636 P.2d 742, 744 (1981). In addition, "[i]neffective assistance of counsel claims based on the failure to obtain witnesses must be supported by affidavits or sworn statements describing the testimony of the proffered witnesses." Richie, 88 Hawai'i at 39, 960 P.2d at 1247. Pomroy did not present affidavits or sworn statements in this case regarding the witnesses he contends trial counsel should have called. Accordingly, the claim of ineffective assistance for failure to call witnesses must fail.[6]

Finally, Pomroy contends that his trial counsel gave him faulty advice regarding whether to testify at trial. The record does not contain the substance of the advice or the reasons for the advice that trial counsel gave to Pomroy regarding whether to testify. Thus, the record is not sufficiently developed for us to evaluate this claim. We deny Pomroy's ineffective assistance of counsel claim on this ground, without prejudice to Pomroy's raising it in a subsequent proceeding under Hawai'i Rules of Penal Procedure Rule 40 (2006). See State v. Silva, 75 Haw. 419, 439, 864 P.2d 583, 592-93 (1993).

---

[6] Because Pomroy did not obtain new counsel until after sentencing, our denial of this claim is without prejudice to Pomroy's raising it in a Hawai'i Rules of Appellate Procedure Rule 40 (2006) proceeding.

13

CONCLUSION

   We affirm the District Court's Judgment of Conviction and Sentence.

   DATED: Honolulu, Hawai'i, December 26, 2012.

On the briefs:

Steven D. Strauss
(Law Offices of Steven D. Strauss)
for Defendant-Appellant

Roland J. Talon
Deputy Prosecuting Attorney
County of Hawai'i
East Hawai'i Unit
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

14